NEW-YORK,
June, 1823.

The People
vs.
Nath'lReeder,
et al.

2. That the Spanish dollar not being a legal tender in the United States, or in this State, has no legal value and that it was a well settled principle of law, that foreign coin must be avered to be so, and its value set forth in the indictment. No value being set forth, it does not appear to the Court that any loss has been sustained, and cited 1 Mass. Rep. 245.

*Maxwell, District Attorney*, replied, that the State of New York was one of the United States, and what was the current coin of the United States was also the current coin of the State of New York, and that he took the first exception, made by the counsel for the prisoner, to be untenable.

With respect to the second objection, he took the law to be, where the coin was current in the country, and it had a well known and settled value, it was unnecessary to aver the value in the indictment.

---

The People *vs.* Nathaniel Reeder, Frederick Syfor, and John Nugent. *Highway Robbery.**

The prisoners were charged with committing a robbery on the 4th day of June, 1823, on the person of John I. Davis, of his pocket book, containing forty-two dollars, in the suburbs of the city of New York.

The uncorroborated testimony of a young accom-

THE facts of the case were as follows: A Mr. John I. Davis, who resided in Essex County, in New Jersey, came into the City on business, and got in company with the

prisoners in Banker-street. He entered into conversation, and drank with Reeder, and was seen, by him and the other prisoners, to be in possession of a considerable amount in bank notes. About dusk they invited him to walk to the gardens, for the purpose of procuring ice-cream. They walked some distance, and when they had arrived near the residence of Col. Rutgers, Reeder struck him over the face and eyes, and the other prisoners surrounded him ; some seizing him by the arms, and different parts of the body, and, finally, succeeded in wresting his pocket-book, containing upwards of forty dollars, and immediately ran away. He could not identify Syfor.

NEW-YORK, June, 1823.

The People *vs.* Nath'lReeder, et al.

plice, to the identity of a prisoner, on a charge of robbery in the absence of all the testimo'y does not seem sufficent to convict.

Mr. Davis, as soon as he recovered, went in pursuit of them, and by the assistance of the Watch secured Reeder, Syfor, and Nugent were afterwards taken.

The prisoners were arrested, examined, and committed for trial. For John Nugent, one of the prisoners, a lad about fifteen years of age, a *nolle prosequi* was entered, and he was made a witness on the part of the people against the others.

*Scott*, counsel for the prisoners, contended that it was discretionary with the Court to admit or refuse the testimony of an accomplice ; that in cases where the penalty was so very severe, and the witness offered so young, the Court would not suffer the witness to be sworn. The Court decided they would hear the witness. He was sworn, and testified that he was in company with the other prisoners, in Banker street, and went with Davis, as testified by him, and that Syfor was concerned with the others, &c. He corroborated the testimony given by Mr. Davis.

These facts being made out, *Maxwell, District Attorney,,* rested the case.

NEW-YORK,    The Court, after recapitulating the facts to the jury, ob-
June, 1823.
——————, served, that it was an important case, and deserved the
The People most serious attention of the jury; that if the prisoners
vs.
Nath'lReeder, were found guilty, the Court had no discretion, but must
et al.    sentence them for life to the State Prison.   As it respected
Reeder, the evidence appeared conclusive and satisfactory;
but as to Syfor, he was only identified as one of the rob-
bers, by Nugent, as an accomplice.

The Court observed that the jury had a right to con-
vict upon the uncorroborated testimony of an accomplice,
but that the general rule adopted in this Court was, that
the uncorroborated evidence of an accomplice was ,not suf-
ficient.   In this case, the identity of Syfor was proved on-
ly by the testimony of Nugent, the accomplice.   It was,
therefore, a question for the jury to decide what credit they
would give to the accomplice.

*Note.—Robbery is defined to be a violent and felonious taking from
the person of another of money or goods of any value,  and putting
him in fear.   Hawk. P. C. p. 95.  Blac. Com. vol. 4, p. 242.   3 Inst.
68.   Wils. Lec. vol. 3, p. 58.   Chitty's C. L. vol. 3, p. 561.

It is agreeable to the above definition, laid down in the books, that

1.  There must be a felonious intention.
2.  There must be force, either express or implied.
3.  There must be an actual taking from the person.

1.There must But this intent must be carried into execution by a forcible and actual
be a felonious
intention.      taking.   The mere intent to rob is not a felony, at common law.   It
was however, made so, where the intent was evinced by an attempt
to carry it into execution, in England, by 7 Geo. 2 C. 21. and was pun-
ished with transportation for seven years.   In New York, we have a
statute (R. L. vol. 1, p. 409) almost as penal as the English statute.
It enacts that, those guilty of an assault with intent to rob, &c.'

may be imprisoned, in the state prison, for any period of time not exceeding seven years.

This force and violence, and putting in fear, need not be such as to induce the party to apprehend great danger of life or bodily harm. It is enough that so much force or threatening, by word or gesture, be used, as might create an apprehension of danger, as to induce a man to part with his property without or against his consent. Fost. 128. 1 Hale, P. C. 534.

Wherever a person assaults another, with such circumstances of terror as puts him in fear, and causes him, by reason of such fear, to part with his money, the taking thereof is adjudged robbery, whether there were any weapon drawn or not, whether the person assaulted delivered his money upon the other's demand, or afterwards gave it to him, upon his ceasing to use force, and begging an alms; for he was put in fear by his assault, and gives him his money to get rid of him. Hawk. P. C. c. 84. § 9.

It may be committed without the application of actual force. In some acts it is implied. That kind of which, in common experience, would be sufficient to induce a man to part with his property against his consent, either for the safety of his person or for the preservation of his good name, is sufficient to constitute the act a robbery, even where a demand of money has not been made. 1 Hawk. P. C. c. 34 § 6, (note.) As if one obtain property by threatening to accuse another of having been guilty of un unnatural crime. Ibid.

It has been decided that there need not be actual force and fear; but one is a natural inference from the other. East. P. C. p. 711. Chitty, vol. 3, p. 562.

And it is undoubted law, that where fear is not apparent, but actual force is shown, some violence must have been committed, or personal outrage offered. To snatch property suddenly from the hand, to seize a parcel carried on the head, to catch off a hat or wig, without force, and to take an umbrella of a sudden, are only larcenies. 1 Leach, 290, 1. (notes.) These cases seem to have been ruled larcenies, because there was no struggle on the part of the owner to retain his property.

*Marginalia:* NEW-YORK, June, 1823. The People vs. Nath'lReeder, et al.

There must be some degree of violence and putting in fear.

Force, actual and implied.

Putting in fear

NEW-YORK, June, 1823.

The People
vs.
Nath'lReeder,
et al.

But where a man snatched at the sword of a gentleman as it hung at his side, and the latter perceiving the design, laid hold on the scabbard on which a contest ensued, and the thief succeeded in wresting the weapon from its owner, his offence was holden to be robbery. Ibid.

So, also, where the diamond pin was snatched from a lady's hair, into which it was fastened, and by the force the pin and some of the hair was torn away, it was held robbery. 1 Leach, 320.

And it was also held robbery, in the case of the bailiff who hand-cuffed his prisoner and used her with cruelty, and by that means extorted money from her. 1 Leach, 280. 1 East. P. C. 709.

So, also, if a person ask alms, with a drawn sword, of one he forces through terror to give him money, by such acts or menaces as would overpower a firm and prudent man, he will be guilty of robbery. Ibid.

Fear implied. Actual fear is not an essential requisite of this crime. See Justice Foster's opinion, which was, that if a man was attacked by a highwayman, and robbed, and previous to the robbery, resisted and was overpowered without being put to any fear at all, it would not be the less robbery on that account. F. 128. So, also, where a man is knocked down, without any previous warning, and stripped of his property while senseless, though strictly he cannot be said to be put in fear, yet it is a robbery. Hawk. P. C. 45, § 6. It is also robbery to force from the possession of another his property, by the accusation of a great or unnatural crime. 1 Leach, 139, 193, 278, 280. East. P. C. 734.

Constructive force by threatening. The threat must have such an influence over the mind, where the force is merely constructive, as to prevent or disenable the party to make resistance. 2 Leach, 721. 6 East. 126.

A threat to take an innocent person before a magistrate, and thence to prison, without at the time charging him with any specific crime, and, in consequence of the threat, obtain money to induce forbear-

ance, is not robbery.  2 Leach, 721. ˑWhere a party met, in the time
of riots, and threatened to pull down a house, and thereby induce the
owner to part with his property, it was held robbery.  2 East. C. L.
p.7 29, 731.  See also the case of a person who attempted to commit a
rape, the woman, in order to induce him to desist, offered him money
which he received, and again renewed his attempt.  When arrested,
it was held a robbery.

NEW-YORK,
June, 1823.

The People
vs.
Nath'lReeder,
et al.

It is, however, perfectly immaterial of what value the thing taken may
be.  3 Inst. 68.  The property must be actually taken, it must have
passed into the possession of the offender.    Chitty's C. L. vol. 3, p.
561.

There must
be a taking
from the per-
son of another

It is unnecessary the property should be carried away.  Cutting the gir-
dle upon which a purse was fastened; from the person of the owner,
and the purse fell to the ground, was held not to be a robbery, the
robber not having the property in his hand.  1 Leach, 228.  But
when the offender snatched an ear-ring from a lady's ear, whereby
her ear was torn, it was held robbery, although it was entangled in
her hair, and fell out of his hand.  1 Leach, 321.

From the per-
son.

The taking need not be out of the hands, pockets, or from the body of a
person.    It is sufficient if it be taken in his presence and from his
control.    It is a robbery where a man, by threats and menaces, puts
a man in fear, and drives away his sheep or cattle. 1 Hale, P. C. 533.
And if a man take a purse which another, on being assaulted, has
thrown away through fear ; or his hat, which has fallen from his head
or his property from a servant, in his presence, he will be considered
as having taken it from the person.  3 Inst. 39.  Hawk. b. 1. c. 34,
§ 6.  See 2 Stra. 1015.

In his pres-
ence.

It is not necessary to lay, in the indictment, that the robbery was com-
mitted by putting in fear; it is sufficient if laid to have been done
with violence.  4 Bla. Com. 243.  1 Hawk, c. 34.  7 Mass. Rep. p.
242.  City Hall Rec. vol. 2, p. 7.

Robbery was punished by the Saxons with death, and was reduced by

NEW-YORK,
June, 1823.

The People
*vs.*
Nath'lReeder,
et. al.

the Danes to a fine.   See Bac. on Gov.   But the punishment was again altered in the reign of Henry I. See also 23 Hen. VIII. c. 1. and 3 and 4 W. and M. c. 9.

In this State it was formerly punished with death, but has been altered by statute.   1 vol. Rev. Law, p. 404, to imprisonment for life.